Casey, Ch. J.,
delivered tbe opinion of tbe court:
Tbe petition in this case claims a sum exceeding twenty thousand dollars, for merchandise destroyed by thé bombardment and burning of San Juan, or Greytown, by Commander Hollins, *546 of the United States Navy, in command of the United States man-of-war Oyane, on the 13th of July, 1854.
The claimant and her husband, Mr. Trautman Perrin, were French subjects, temporarily domiciled at Greytown, having with them, contained in a store hired for the purpose, a valuable lot of merchandise. The inhabitants of Greytown prior to'this time had been guilty of many outrages and depredations upon the persons and property of the citizens of the United States passing that way. They had also treated with great rudeness and indignity an accredited minister of the United States to one of the South American governments in his passage through Nicaragua. The passage across Central America had become a matter of great importance to the United States by the cession of California to her by Mexico, the discovery of large deposits of gold there, the consequent rush of emigration, and the necessity for the shortest and most rapid route of communication between the Atlantic seaboard and her Pacific possessions; and Greytown had become the resort of desperate and reckless adventurers, who took pleasure in despoiling the citizens of the United States and insulting her flag and authority. The United States applied to the Nicaraguan authorities to restrain and suppress this lawless and obnoxious conduct. But the local government was either unable or unwilling to do so. The outrageous character of these acts, and the frequency of their occurrence, called for prompt and decided action on the part of the United States. Accordingly, by command of the President of the United States, Oammander Hollins proceeded with the United States ship Oyane to that place. Arriving there, he communicated with Mr. Fabens, the commercial agent of the United States at Greytown. He also made repeated demands ' upon the authorities for reparation and indemnity for property belonging to citizens of the United States taken or destroyed by inhabitants of Greytown, and secretly connived at or openly sanctioned by the public authorities of the town. He also required suitable apologies to be made for the indignities offered to the United States in the .person of her accredited minister; and gave full and distinct notice that unless such reparation was made, and such apologies offered as were satisfactory to the United States, within a given time, he would open fire upon the place. These demands remained unheeded, and on the 13th July, 1854, Commander Hollins opened fire from his ship upon *547 tbe town. A large portion of tbe place was battered down by tbe guns of tbe ship, and then a party was sent on shore to aPI>ly the torch, and complete by burning what had escaped the bombardment. The town was totally destroyed. Commander Ilollins made a detailed report of bis operations to tbe Secretary of tbe Navy; and tbe President in his annual message for 1854 communicated all tbe facts in tbe caseto Congress. Commander Hollins’ conduct was approved; and be was commended for the prompt and efficient manner in which be bad carried out tbe instructions of bis government.
It is part of tbe case that tbe claimant has applied successively to tbe French government, to Congress, and the executive authorities of the United States for redress and indemnity for her losses without success.
The claimant’s case must necessarily rest upon the assumption that the bombardment and destruction of G-reytown was illegal and not j nstified by the law of nations. And hinging upon that, it will bo readily seen that the questions raised are such as can only be determined between the United States and the governments whose citizens it is alleged have been injured by the injurious acts of this government. They are international political questions, which no court of this country in a case of this kind is authorized or empowered to decide. They grew out of and relate to peace and Avar, and to the relations and intercourse betAveen this country and foreign nations. They are political in their nature and character, and under our system belong to the political departments of the gOA’ermneut to define, arrange, and determine. And Avheu the questions arise incidentally in our courts the judiciary folloAV and adopt the actio'n of the executive and legislative departments, whatever that may be. The case, we think, bears no resemblance to that of Grant v. The United States, (1 C. Cls. R., p. 41,) or Wiggins v. The United States, (3 id., p. 197.) In both cases the claim was for property of citizens taken by the United States and destroyed to prevent it falling into the hands of the public enemy. It was not destroyed iu hostile operations against the public enemy, but for tlie purpose of preventing the aid and succor it Avould have afforded him if it liad been permitted to fail into Ms hands. No government-, except as a special favor bestowed, has ever paid for the property of even its own citizens in its own country destroyed in attacking or defending against a common public *548 enemy; mucb less is any government bound to pay for tbe property of neutrals domiciled in tbe country of its enemy, wbicb its forces may cbance to destroy in its operations against sucli enemy. Tbe doctrine is clearly and concisely stated in tbe letter of Hon. William H. Seward, Secretary of State, to Hon. Charles Sumner, chairman of the Committee on Foreign Eelations of tbe United States, dated February 26,1868, and in reference to this case.
.“Sir: I have examined tbe claim which you commended to tbe attention of this department, of Mr. Trautman Perrin, for damages sustained in tbe bombardment of Greytown in 1854, by Commander Hollins. It would be a sufficient answer that Mr. Perrin, at tbe time tbe injuries were sustained, was a French subject, and that bis government has acquiesced in the refusal of tbe United States to grant any indemnity for the losses of French subjects on that occasion.
“Tbe British government, upon tbe advice of tbe law officers of tbe Crown, declared to Parliament its inability to prosecute similar claims. In 1857 Lord Palmerston applied tbe decision in tbe case of Greytown as a precedent for refusing compensation to British merchants whose property in a Prussian port bad been destroyed by a British squadron during tbe Crimean war. (See note in Lawrence’s Wheaton, p. 145.)
“Tbe governments of Austria and Bussia have applied tbe doctrine involved in tbe Greytown case to the claims of British subjects, injured by belligerent operations in Italy in 1849 and 1850. (Seenotep.49, vol.2, of Vattel, Guillaumin & Co’s edition, 1863.) We have applied tbe same principle in declining to make reclamations for citizens of tbe United States whose property was destroyed in tbe bombardment of Valparaiso by a Spanish fleet, and in resisting tbe claims of subjects of neutral powers who sustained injury from our military operations in tbe Southern States during tbe recent rebellion. It will probably be found a sufficient answer to tbe reclamations of many of our citizens who have sustained losses from belligerent operations on both sides during tbe recent occupation of Mexico by French troops. Tbe principle affirmed is, that one who takes up a residence in a foreign place and there suffers an injury to bis property by reason of belligerent acts committed against that place by another foreign nation, must abide tbe chances of tbe *549 country in wbicb be. cboso to reside; and bis only claim, if any, is a personal one against tbe government of that country in wbicb bis own sovereign will not interest bimself.
“Tbe only discrimination suggested in Mr. Perrin’s case is on account of tbe very temporary nature of bis sojourn at Grey-town. I tbink this cannot affect tbe principle, wbicb is too valuable in tbe present circumstances of this country, to allow us to waive or impair it.
“By no allowed construction of tbe laws could this claim be paid out of any fund under tbe control of tbe department, and tbe considerations I have stated forbid its recommendation to Congress.
“Your obedient servant,
“WILLIAM H. SEWABD.”
Adopting these views as a' correct exposition of tbe laws and usages of nations upon this subject, we are very clear that the claimants have presented no available claim against tbe United States wbicb is cognizable in this court. We therefore sustain tbe demurrer and dismiss tbe petition.